MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Elisa S. and Leon K. to their daughter, Maritza, now twenty-one months old. At birth, Maritza tested positive for the presence of drugs in her system. Her mother voluntarily placed her with the Department of Children and Families (hereafter the Department) upon her discharge from the hospital. As a result, this young child has never lived with either parent during her short life. On June 27, 1996, a neglect petition was filed. Maritza was adjudicated neglected and committed to the care and custody of the Department on October 15, 1996. On that day, the termination petition was also filed. Presently, Maritza is in foster care and doing well there. Her foster parents wish to adopt her. CT Page 13139
On November 7, 1997, Elisa S. consented to the termination of her parental rights in open court. She filed written consents on that date. Her consent was found to be voluntarily and knowingly made with the advice and assistance of competent legal counsel and with an understanding of the consequences of her consent to such court action (Foley, J.). Her attendance in court at further proceedings in court was excused.
On December 19, 1997, Leon K. appeared in court with counsel and contested the petition. The court finds that the mother has appeared during the pendency of the case. She has a court appointed attorney. The father was provided notice by publication, has appeared and had counsel appointed. The court has jurisdiction in this matter; there is no pending action affecting custody of the child in any other court. The Department seeks the termination of parental rights as to the mother on the grounds of consent. It seeks the termination of the father's rights on the grounds that the father has abandoned the child, Connecticut General Statutes § 17a-112(c)(3)(A) and that the child has previously been adjudicated neglected and the father has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, such parent could assume a responsible position in the life of the child. General Statutes § 17a-112(c)(3)(B).
The court, having read the verified petition and the social study, heard the testimony of the Department caseworker, Kathy Acosta, and reviewed the eight exhibits entered into evidence makes the following findings:
The biological father was notified by publication of the petition for termination of his parental rights to Maritza, as his whereabouts at that time were unknown. Nonetheless, he had knowledge that the child was in the care of the Department, as he had visited the child on earlier occasions with Elisa S. while the neglect proceeding was pending. During the time Maritza was in the care of the Department, he did not send gifts, toys or cards. He also made no inquires with the Department about her welfare and development and made no support payments. The Department was able to locate him in the summer of 1997 as he was incarcerated.
Leon K. has a long criminal history, extending back ten CT Page 13140 years. The convictions are for drug possession and sales and he has spent time in prison intermittently since 1992. At present, he is in a halfway house where he receives drug counseling and treatment. He will remain there until the summer of 1998. He is employed full time. He has not spoken of any plans to care for his daughter when he is released.
As his whereabouts were unknown at the time the termination petition was filed, no expectations were set as to him and no efforts at reunification made. Expectations were established by the court for the mother of the child, which expectations indicate the reasonable actions a drug-addicted parent of this child would be expected to take to be able ultimately to reunify with her. Those include drug treatment and counseling which Leon is presently receiving at the halfway house, where he has been free of drugs for two months. Other normal expectations such as to keep his whereabouts known to the Department, to have no further involvement with the criminal justice system and to secure and maintain adequate housing, he has not met.
Since Maritza's commitment to the Department, her commitment has been extended twice in accordance with the statutory requirements. At the first extension hearing on February 28, 1997, the court found further reunification efforts not appropriate. (Teller, J.) Nonetheless, since the Department located Leon K. in the summer of 1997, he has had visitation with the child on one occasion. Visitation was not offered to him while he was incarcerated. The last visit did not go well; the child was unwilling to interact with Leon K., and screamed for most of the visit. Leon K. spent part of the time reading the newspaper and did not seek to actively interact with this child he had not seen for many months. Testimony concerning a visit with Maritza prior to Leon's incarceration when she was but a few months old showed he had no knowledge about how to diaper the child and needed assistance from the caseworker.
The court has previously held that "the incarceration of a parent does not alone constitute abandonment". In re JuvenileAppeal (Docket No. 10155), 187 Conn. 431, 443, 446 A.2d 808
(1982); In re Juvenile Appeal (84-6) 2 Conn. App. 705, 711,483 A.2d 1101 (1984) cert. denied, 195 Conn. 801, 487 A.2d 564
(1985). "The restrictions on movement that are inherent to incarceration, however, do not excuse a failure to make use of available, albeit limited, resources for communication with one's children." In re Juvenile Appeal (Docket No. 10155), supra In Re CT Page 13141 Shannon S., 41 Conn. Sup. 145, 153, 562 A.2d 79 (1989).
However difficult, some of the obligations of parenthood can be pursued, even from prison. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child;.." In re Juvenile Appeal (Docket 9489), 183 Conn. 11, 15,438 A.2d 801 (1981) quoting In re Adoption of Webb, 14 Wash. App. 651,657, 544 P.2d 130 (1975). This court finds by clear and convincing evidence that the father took no concerted action to establish a relationship with Maritza; he did not communicate with her, he did not provide guidance, he did not express concern, he did not inquire about her growth and development. Even while incarcerated, such actions would have been possible for him, yet he did nothing. While he is to be congratulated about the progress he has made in his drug treatment, it is too little and too late for this child. Maritza has no relationship with him, nor he with her. The court holds, based on the clear and convincing evidence, that Leon K. has, by his conduct, effectively abandoned the child within the contemplation of Connecticut General Statutes § 17a-112(c)(3)(A).
Further, the court finds by clear and convincing evidence, this child has been adjudicated neglected and the father has failed to achieve such a degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. Connecticut General Statutes § 17a-112(c)(3)(B). Rehabilitation, as used in the statute, refers to the restoration of an individual to a constructive and useful role as a parent.In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986). The ultimate question is whether the parent at the time of the filing of the termination petition is more able to resume the responsibilities of parenting than he was at the time of the commitment. In re Michael M., 29 Conn. App. 112, 126, 614 A.2d 832
(1992). The court must also consider whether the age and needs of the child support the allowance of additional time for the parent to rehabilitate. In re Luis C., 210 Conn. 157, 167-68,554 A.2d 722 (1989). In this case, Leon K. has made only minimal efforts to rehabilitate himself personally and no efforts to do so as a parent. His lengthy criminal history indicates that he has never been successful in the past ten years in leading a life free of crime or illegal drug use. He has no plans to care for this CT Page 13142 child. The court cannot allow more time to pass for him to achieve a stable life at some unknown time in the future, a life he has been unable to lead for many years in the past.
Maritza has been in foster care all her short life. She is doing well there and is with a loving and supportive family. She has never known her biological mother or her biological father. She has no connection to them and should have a chance to have stability and permanency in her life with those who are able to provide her appropriate care and nurturing.
Adjudication
The mother has consented to termination of her parental rights to this child. With regard to the statutory grounds for termination of parental rights of the biological father, Leon K., the court finds as October 15, 1996, by clear and convincing evidence, that he has failed to support this child or manifest any reasonable parental interest, whatsoever, and has abandoned her as that term is defined in General Statutes § 17a-112(c)(3)(A). Further, as of that date, this child has been adjudicated neglected and the father has failed to achieve such a degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. Connecticut General Statutes § 17a-112(c)(3)(B). The court so finds by clear and convincing evidence.
No findings are made as to the mother in view of her consent to termination. The court makes the following factual findings required by Connecticut General Statutes § 17a-112(e) as to the father, Leon K.:
1) Appropriate and timely services were provided by the Department of Children and Families, including referrals to drug programs and visitation coordination. Due to the father's failure to let the Department know about his whereabouts, further services were not offered.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. The court finds in this proceeding that the father, due to his incarceration and other circumstances relating to the child, was unable to have visitation and did not avail himself of CT Page 13143 such opportunities as he did have to maintain reasonable contact with the child. Further, on February 27, 1997, the court determined that further reunification efforts were not appropriate.
3) The Department, with the approval of the Court, set reasonable and realistic expectations in order to reunify the family. None were set for the biological father, as his whereabouts were unknown. Such steps as were reasonable to expect him to take, he failed to take.
4) The child has just begun to establish emotional ties with the foster family, who are providing the physical, emotional and educational support this child needs. The child has no emotional ties to the biological mother or father.
5) Finding regarding the age of the child. Maritza is twenty-one months old.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions etc. The father has not made realistic and sustained efforts to conform his conduct to acceptable standards. It is too soon to know if he will be able to be rehabilitated to a reasonable place in society, let alone to know whether he could ever parent a child. There has been no evidence of any steps taken by him to do so.
7) Finding regarding the prevention of the parents from having a meaningful relationship etc. The incarceration of the father and his failure to inform the department of his whereabouts resulted in the lack of contact for months at a time. No unreasonable conduct is noted.
DISPOSITION
The court finds that the grounds for termination of parental rights had not existed for a year at the time of the filing of the termination petition on October 15, 1997. Nonetheless, based on the clear and convincing evidence before the court, the court finds from the totality of the circumstances that it in this child's best interest to waive the one year requirement as set forth in Connecticut General Statutes § 17a-112(d)(1). Maritza has a need for permanency and stability in her life and when weighed against the unlikely probability her father's rehabilitation at some distant time in the future, if ever, the CT Page 13144 scales must be tipped in favor of this innocent young child. The court further finds, based upon the testimony and evidence presented, that it is in Maritza's best interest to terminate the parental rights of Elisa S. and Leon K. This finding is made after considering this child's needs, the length of time she has been separated from her family of origin and her right to a secure and permanent environment in which to spend her childhood and grow into responsible adulthood.
It is hereby, ORDERED that the parental rights of Elisa S. and Leon K. are terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. If the foster parents continue to be willing to adopt Maritza, it is the court's direction that they receive first consideration. A permanency plan for Maritza shall be submitted within ninety days. A review plan for her shall be filed in accordance with state and federal law.
Barbara M. Quinn, Judge Child Protection Session